IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PRIVACASH, INC.,

                Plaintiff,                      ORDER

    v.

                                              09-cv-391-slc

AMERICAN EXPRESS COMPANY,
AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC. and
AMERICAN EXPRESS PREPAID CARD
MANAGEMENT CORPORATION,

                Defendants.

---

This is a civil lawsuit in which plaintiff PrivaCash, Inc. alleges that defendants are infringing plaintiff's United States Patent No. 7,328,181 (the '181 patent), which covers a "method and system for transacting an anonymous purchase over the internet." Defendants requested construction of three terms in the '181 patent. Dkt. 38. Plaintiff contends that construction of the terms is unnecessary. Plt.'s Br., dkt. 41, at 1. Now before the court is the proper construction of the 3 claim terms.

**I. Claims Construction Standards**

When construing claims, the starting point is the so-called intrinsic evidence: the claims themselves, the patent specification and the prosecution history. *Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). Examination of the claims' language is the starting point for the well-established process of claim construction. "Claim construction must adhere carefully to the precise language of the claims that the patent [examiner] has allowed." *Ardisam, Inc. v. Ameristep, Inc.*, 336 F. Supp. 2d 867, 879 (W.D. Wis. 2004) (citing *Autogiro Co. of America v. United States*, 384 F.2d 391, 396 (Ct. Cl. 1967)). The language is to

be construed as it would be understood by one of ordinary skill in the relevant art, given its context and the other patent claims. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). Moreover, district courts must remain aware that "[t]he patent applicant may not have used words consistent with the dictionary definition because an applicant can act as his or her own lexicographer or may disavow or disclaim aspects of a definition 'by using words or expression of manifest exclusion or restriction, representing a clear disavowal of claim scope.'" *Ardisam*, 336 F. Supp. 2d at 879-80 (quoting *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331 (Fed. Cir. 2004)).

This initial construction is then considered in light of the specification to determine whether the inventor expressed a different meaning for the language, whether the preferred embodiment is consistent with the initial interpretation and whether the inventor specifically disclaimed certain subject matter. *Rexnord*, 274 F.3d at 1342-43. The specification contains a written description of the invention that is meant to help explain the invention and possibly define claim terms, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), but as a general rule, "limitations from the specification are not to be read into the claims." *Golight*, 355 F.3d at 1331. Finally, the interpretation is examined for consistency with the patent's prosecution history and any disclaimers made therein. *Rexnord*, 274 F.3d at 1343.

Last, a court may consult extrinsic evidence, such as dictionaries, treatises and expert testimony for background information and to "shed useful light on relevant art." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (internal citations omitted). In general, this type of evidence is less reliable than intrinsic evidence in determining the meaning of claim terms and is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1318-19.

**II. The '181 Patent**

    **A. Non-personalized cardholder name**

I conclude that the term "non-personalized cardholder name" as used in claim 1 of the '181 patent means **a name that does not identify the purchase card as belonging to a specific cardholder and that is used by a retailer to complete a purchase transaction**. Plaintiff contends that "non-personalized cardholder name" does not need to be defined because it is readily understood to refer to "a name that is never associated with a specific cardholder." Plt.'s Br., dkt. 41, at 7. I disagree.

It is proper to begin by placing the term in context:

> wherein each of the purchase cards is a bearer instrument having an associated account number issued by a major branded credit card organization, an expiration date and a *non-personalized cardholder name* selected by the purchase card provider printed thereon, wherein the purchase card does not include information identifying the specific perspective cardholder[.]

'181 Pat., col. 6, lns. 32-38. (Emphasis added.) The ordinary meaning of "non-personalized cardholder name" in context of the claim language is "a name that does not identify the card as belonging to a specific cardholder." This meaning of "non-personalized" is proper in light of the ordinary definition of "personalized" which is to "make (something) identifiable as belonging to a particular person, esp. by marking it with their name or initials: [as adj.] (**personalized**) *personalized license plates*." *New Oxford American Dictionary* 1269 (2d ed. 2005).

The purpose of the patented method further supports this construction of non-personalized. According to the specification, the "primary objective" of the patented method is to "create a non-traceable means to transact a purchase over the Internet." '181 Pat., col. 2, lns. 65-67. Thus, the non-personalized cardholder name must not be linked to the identity the

3

specific cardholder. If the name on the card does not identify the card as belonging to the specific cardholder, then the card would not be traceable to the cardholder using the name on the card. Moreover, the specification's examples of non-personalized names supports construing "non-personalized" as "a name that does not identify the card as belonging to a specific cardholder." *Id.*, col. 3, lns. 15-16 ("a non-personalized cardholder name **43** (such as the name of the purchasing intermediary)"); col. 5, lns. 16-19 ("they simply insert the cardholder name, for example the name of the purchasing intermediary or an alias such as 'John Smith' as provided on the card.").

Plaintiff's concern over using the word "identify" as opposed to "associate" is unfounded. Plaintiff contends that a card with a faux name chosen by the consumer would be a "non-personalized cardholder name" under a construction using the term identify. First, the claim states that a non-personalized cardholder name must be "selected by the purchase card provider," '181 Pat., col. 6, ln. 36, which makes plaintiff's concern about a consumer choosing a "personalized" faux name a non-issue. Further, the issue raises a distinction without a difference. The definition of "identify" includes use of the word "associate:" "associate (someone) closely with; regard (someone) as having strong links with." *New Oxford American Dictionary* 839, #2 (2d ed. 2005). However, use of the word "identify" helps provide a smoother connection between the purpose of the patented method, that being, engaging in a transaction in an anonymous manner, and the purpose of providing a non-personalized cardholder name, that being, providing "pseudo purchase transactional information to the consumer." '181 Pat., col. 5, ln. 12.

Plaintiff also challenges the second portion of the construction: "that is used by a retailer to complete a purchase transaction." Plaintiff contends that construing "non-personalized cardholder name" to include this additional limitation improperly imports a limitation from the specification into the claim. Again, I disagree. Although plaintiff is correct in noting that it is improper to read a limitation from the specification into the claims, the court's construction does impose such a limitation. *Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340, 1347 (Fed. Cir. 2004). Instead, the construction follows the rule that "'[c]laims must be read in view of the specification, of which they are a part.'" *Id.* (alteration in original) (quoting *Markman*, 52 F.3d at 979).

It is true that claim 1 does not provide any function for the "non-personalized cardholder name." As the claim is written, the term serves no function and appears to be nothing more than an aesthetic limitation. However, the presence of a purely aesthetic limitation in a method claim doesn't quite jive. If the "non-personalized cardholder name" serves no functional purpose, as plaintiff contends, then the term is superfluous to the patented method. In fact, if the term serves no functional purpose, the method's purpose, anonymous internet transactions, would be best served using a card with no name at all. This leads to the logical conclusion that the term must serve some purpose in the patented method. A look at the specification and patent history helps clear up the ambiguity regarding the term's purpose.

Turning to the specification, it is clear that the "non-personalized cardholder name" does serve a functional purpose under the patented method. The "non-personalized cardholder name" is a necessary component for conducting an anonymous transaction with a retailer over the internet, which is the patented method's "primary objective." '181 Pat., col. 2, lns. 65-67.

5

Simply put, the non-personalized name is used when the cardholder is prompted by the retailer's application or web-site to provide a name in completing a purchase. *Id.*, col. 5, lns. 15-17. The specification is clear that "[t]he account number, cardholder name and expiration date are [ ] used by the retailer's application to complete the purchase transaction with the consumer in a manner known in the art." *Id.*, col. 5, lns. 21-24. Another portion of the specification explains that

> The purchasing card **40** includes a unique and non-traceable Master Card or Visa credit account number **42**, a non-personalized cardholder name **43** (such as the name of the purchasing intermediary) and an expiration date **44** which allows the consumer the ability to make a purchase(s) over the Internet or in other "bricks and mortar" retail establishments.

*Id.*, col. 3, lns. 13-19.

In light of those clear statements, the patented method requires not merely a non-personalized name but a non-personalized name that allows the consumer to make anonymous purchases over the internet by permitting a retailer to use the name to complete a purchase transaction. *Cf. SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001) ("Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.").

The prosecution history for the '181 patent further supports limiting the term to a non-personalized name used by a retailer to complete a purchase transaction. "'[A] court should also consider the patent's prosecution history, if it is in evidence. . . . Like the specification, the prosecution history provides evidence of how the [Patent Office] and the inventor understood

6

the patent.'" *Ultimax Cement Manufacturing Corp. v. CTS Cement Manufacturing Corp.*, 587 F.3d 1339, 1347 (Fed. Cir. 2009) (alterations in original) (quoting *Phillips*, 415 F.3d at 1317). According to the prosecution history for the '181 patent, the patentee understood the patented method to require that the non-personalized cardholder name be used by a retailer in completing an anonymous internet transaction.

During prosecution of the patent, the patentee, represented by his attorney, argued that a novel feature of patented method, which was not disclosed in the prior art, was providing a non-personalized cardholder name and an account number to a retailer to complete a transaction. Spaccarotella Decl., dkt. 39, exh. F at AXPR0016376. The patent examiner rejected the patentee's argument because the "non-personalized cardholder name" had no function in the patented method. *Id.* The examiner suggested that the prior art could be overcome if there was an

> amendment to the specification which specify [sic] that the purchase transaction is based upon the account number and the non-personalized information associated with the purchase card and that the speci[f]ication also provides other details which defines the personalized information in order to facilitate the claim interpretation and how it relates [to] the purchase transaction process.

*Id.*

The patentee filed an amendment that added "a non-personalized cardholder name **43**" to the list of items in the specification that allowed the consumer to complete a purchase with a retailer over the internet, *id.*, exh. G at AXPR0014212, and the portion of the specification explaining that the account number, non-personalized name and expiration date are used by a retailer to complete the purchase transaction, *id.*, at AXPR0014215. Additionally, the patentee reworded the "transacting" step in the claims to require use of the account number and the non-

7

personalized cardholder name to complete a purchase. *Id.* at AXPR0014216. In the patentee's remarks regarding the amendments, he noted that the examiner had "requested that the specification more clearly state that a purchase is transacted based upon the account number and the non-personalized cardholder name associated with the purchase card." *Id.* at AXPR0014219. He also explained that he had "made minor amendments to the specification in accordance with the Examiner's suggestions" and he confirmed "that such amendments merely serve to clarify the present invention, but do not constitute new matter to the application." *Id.* at AXPR0014219.

Limitation of the scope of a claim using the patent's prosecution history requires a clear statement in the history that shows "reasonable clarity and deliberateness" in creating the limitation. *University of Pittsburgh of Commonwealth System of Higher Education v. Hedrick*, 573 F.3d 1290, at 1296 (Fed. Cir. 2009). The statements by the inventor along with the amendments to the patent's specification are just such clear, deliberate statements. They unambiguously reflect the patentee's understanding that the patented method requires that the non-personalized cardholder name be used by retailers to complete transactions.

Plaintiff contends that there was no clear limitation of the patented method because the alteration of the "transacting" step in the actual claim language was eventually eliminated before the patent was issued. However, this change in the claim language does not change what the patentee expressed as his understanding and clarification of the "present invention." Further, the clarifications in the specification regarding the function of the non-personalized cardholder name were never eliminated from the patent. The patentee's explanation that a novel feature of the patented method was using the non-personalized cardholder name to complete a purchase transaction with a retailer and memorialization of that explanation in the specification clearly

8

confirm the limitation. Therefore, the court cannot construe the term without the limitation that the "patentee itself regarded as comprising its inventions and represented to the PTO." *Microsoft Corp.*, 357 F.3d at 1349.

### B. Purchase card outlet

I conclude that the term "purchase card outlet" as used in claim 1 of the '181 patent means **a retail establishment, regardless of type, where purchase cards are offered for sale**. I have adopted a modified version of defendant's proposed construction that resolves plaintiff's concern that defendant's proposed construction would create ambiguity. Plaintiff agrees that a "purchase card outlet" is a place where purchase cards are offered for sale. Plt.'s Resp. Br., dkt. 44, at 14. Its problem with the construction is that "retail establishment" could be understood to include only "bricks and mortar" retailers, that is, a physical retail building where a person can walk in and make a purchase, as opposed to including internet retailers. However, leaving "outlet" to its plain and ordinary meaning does not resolve this ambiguity. *See*, *e.g.*, *New Oxford American Dictionary* 1208 (2d ed. 2005) ("outlet" – "a place from which good are sold or distributed: *a fast food outlet*. ■ a retail store that sells the goods of a specific manufacturer or brand: [as adj.] *an outlet store*.") Addition of the phrase "regardless of type" removes the ambiguity. Further, defendant agrees that the term should not be limited to a specific type of retail establishment. Def.'s Resp. Br., dkt. 45, at 12. Therefore, adding "regardless of type" is proper.

Additionally, I note that the specification's consistent use of "retail establishment" to define where a consumer can obtain a purchase card supports defining "outlet" as a "retail

9

establishment." The specification does not use the term "purchase card outlet" to refer to the location where purchase cards are sold; instead, it refers to "retailers" or "retail establishments." *See*, *e.g.*, '181 Pat., col. 3, lns. 4-6 ("a currency conversion must take place via an intermediary web site over the Internet or in a 'bricks and mortar' *retailer*"); lns. 7-8 ("a pre-paid purchasing card is to be offered by the *retailer*"); lns. 9-10 ("The consumer would visit the *retail establishment* **32** . . . to buy **31** one or more purchasing cards."); lns. 43-45 ("the *retailer* may also receive a fee from the purchasing intermediary for each purchasing card which was purchased at their *retail establishment*"); and lns. 46-47 ("The consumer then buys the purchasing card **40** at the *retailer establishment* **32**"). "[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'" *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Accordingly, "outlet" as used in claim 1 of the '181 patent means "retail establishment," regardless of type.

### C. Contacting the purchase card provider

Defendant does not actually propose a construction of "contacting the purchase card provider" as used in claim 1 of the '181 patent. Instead, it contends that only the consumer/cardholder can engage in the "contacting" step of the claimed method because that is the only way the step is taught in the specification. Plaintiff contends that such a construction would improperly read a limitation from the specification into the claim language because the claim language says nothing about who must engage in the contacting step. I agree with plaintiff

10

that the claim should not be limited as defendant proposes. Further, the term's plain and ordinary meaning is easily discernible from the claim language. Nothing is necessary to elaborate the term; nothing in the claim language or the specification necessitates a special definition. Therefore, the plain and ordinary meaning controls. *Northern Telecom Ltd. v. Samsung Electrics Co.*, 215 F.3d 1281, 1295 (Fed. Cir. 2000).

Defendant contends that because the "contacting" step comes after the step in which the purchase card is issued to the cardholder, the cardholder must do the contacting. Defendant is correct in noting that the claimed steps must be performed in the order they appear. Although the claims do not recite an order, such as first, second, etc., there is an implicit requirement that they be performed in the written order. *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342-43 (Fed. Cir. 2001). Looking at the claim language, it is clear that the "transacting" step cannot occur before the purchase cards are distributed to purchase card outlets or before the cards are sold, funded and activated. Further, because the cards will expire after activation, '181 pat., col. 6, lns. 58-59 ("to verify . . . that the purchase card is unexpired"), it is logical that they are not activated until they are sold to a consumer. The specification does not teach otherwise; in fact, it teaches performing the steps in the order provided in claim 1. *See id.*, col. 3, lns.65-67 ("Once the consumer buys the purchasing card **40**, they then need to activate **33** their purchasing card **40** by contacting the purchasing intermediary **35**.").

Nonetheless, requiring that the "contacting" step be done after the card is sold to the consumer does not require that the consumer do the contacting. As written, the claim language does not limit who can complete the "contacting" step. It is logical that the purchase card outlet could do the contacting, not just the consumer. The outlet could maintain a list of the cards in

11

its possession and when a card is sold, it would contact the purchase card provider using a number or software only it has to fund and activate the card.  One reasonably can understand that this method of funding and activation could prove to be a beneficial anti-theft tool.  If the consumer does not have the power to fund and activate the card, then there would be no incentive to steal cards from a store.

The doctrine of claim differentiation further confirms that the "contacting" step is not limited to the consumer.  "Under the doctrine of claim differentiation, 'the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.'" *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1252 n.3 (Fed. Cir. 2008) (quoting *Phillips*, 415 F.3d at 1315).  Here, dependent claim 8 adds the following limitation:

> The method of claim 1 wherein the purchase card is provided with contact information imprinted directly on the purchase card to enable the cardholder to contact the purchase card provider.

'181 Pat., col. 7, lns. 19-22.  This limitation "enables" the cardholder or consumer to perform the "contacting" step.  Thus, if the "contacting" step in claim 1 was limited to being performed by only the cardholder, then claim 8 would not be adding a limitation.

Defendant contends that the "contacting" step must be limited to being performed by the cardholder because that is the only embodiment in the specification has the cardholder perform the that step.  It is true that the cardholder performs the "contacting" step in the only embodiment in the specification.  *See, e.g.*, '181 Pat., col. 3, lns. 65-67 and col. 4, lns. 1-21. However, the Court of Appeals for the Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as

12

being limited to that embodiment.'" *Kara Technology Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1345 (Fed. Cir. 2009) (quoting *Phillips*, 415 F.3d at 1323). That the only preferred embodiment in the specification supports defendant's construction is not enough to overcome the broad claim language and the presumption created under the doctrine of claim differentiation. *Kara Technology Inc.*, 582 F.3d at 1347-48. Accordingly, no construction is necessary.

## ORDER

IT IS ORDERED that

(1) the disputed claim terms of United States Patent No. 7,328,181 are construed as follows:

    (a) "non-personalized cardholder name" as used in claim 1 of the '181 patent means **a name that does not identify the purchase card as belonging to a specific cardholder and that is used by a retailer to complete a purchase transaction**.

    (b) "purchase card outlet" as used in claim 1 of the '181 patent means **a retail establishment, regardless of type, where purchase cards are offered for sale**.

(2) The other disputed claim term addressed in this opinion retains its plain and ordinary meaning.

Entered this day of 26th March, 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge