IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PRIVACASH, INC.,

                Plaintiff,                            ORDER

v.

                                                                   09-cv-391-slc

AMERICAN EXPRESS COMPANY,
AMERICAN EXPRESS TRAVEL RELATED
SERVICES COMPANY, INC. and
AMERICAN EXPRESS PREPAID CARD
MANAGEMENT CORPORATION,

                Defendants.

---

This is a civil lawsuit in which plaintiff PrivaCash, Inc. alleges that defendants' American Express Gift Card infringes claims 1, 6 and 8-13 of plaintiff's United States Patent No. 7,328,181 (the '181 patent), which covers a "method and system for transacting an anonymous purchase over the internet."  Now before the court are the parties' cross motions for summary judgment on infringement and invalidity.  Dkt. 63 and 68.

I conclude that PrivaCash has failed to adduce sufficient proof to allow a reasonable jury to find that defendants' gift card infringes claims 1, 6 or 8-13 of the '181 patent.  Therefore, defendants are entitled to summary judgment on PrivaCash's infringement claim.  As a result, it is not necessary to reach defendants' invalidity counterclaims.

For the purpose of deciding defendants' motion for summary judgment, I find that the following facts are undisputed and material:

## FACTS

### I.  The Parties

Plaintiff PrivaCash, Inc. is an Ohio corporation having a principal place of business in Monroe, Michigan.  Defendants American Express Company and American Express Travel

Related Services Company, Inc. are New York corporations. Defendant American Express Prepaid Card Management Corporation is an Arizona corporation.

## II. The Patent -In-Suit

U.S. Patent Number 7,328,181 (the '181 patent), titled "Method For Transacting A Purchase Using A Non-Personalized Purchase Card," was filed on October 7, 2005 and issued on February 5, 2008. The primary objective of the '181 patent is to create an open-loop and untraceable means of making a purchase that simulates a cash transaction over the internet.

Claim 1 of the '181 patent, the only independent claim asserted in this action, states:

> 1. A method of transacting a purchase, comprising:
>
> distributing a plurality of unfunded purchase cards from a purchase card provider to a plurality of purchase card outlets, wherein each of the purchase cards is a bearer instrument having an associated account number issued by a major branded credit card organization, an expiration date and a non-personalized cardholder name selected by the purchase card provider printed thereon, wherein the purchase card does not include information identifying the specific perspective [*sic*] cardholder, wherein information associated with each of the purchase card accounts is maintained in a software implemented application operated by the purchase card provider;
>
> issuing a purchase card to a cardholder at the a [*sic*] purchase card outlet;
>
> contacting the purchase card provider to fund and activate the purchase card account of specific purchase card issued with a software implemented application or via the telephone; and
>
> transacting a cardholder purchase at any one of a number of retailers not associated with the purchase card outlet which accepts credit cards of the major branded credit card organization, wherein the cardholder presents the purchase card and the retailer contacts the purchase card provider over a network connection to interface

> with the software implemented application transmitting the purchase amount and the purchase card account number without requiring the retailer to collect and transmit personalized cardholder identifying information, to verify using the software implemented retail application that the purchase card is unexpired and that the purchase amount does not exceed the cardholder's funding limit, whereupon the purchase card account information will be debited by the amount of the purchase and the account of the retailer will be electronically credited completing the purchase transaction.

The term "non-personalized cardholder name" does not appear in the transacting step of claim 1, only in the distributing step. The transacting step identifies two pieces of information that the retailer must send to the card provider: the purchase amount and the purchase card account number.

The '181 patent specification explains that a problem with a consumer using a personal credit card to make purchases over the internet is that the credit card number itself provides the vendor with a trail back to the consumer's social security number and other private and personal information that the consumer would not normally circulate. Specifically, the specification teaches the following:

> The current mechanism for transacting business purchases over the Internet could lead to irreparable harm and embarrassment to one's credit standing, as well as one's personal and professional business life. Accordingly, there is a significant need for a means by which a consumer may confidentially make a purchase over the Internet.

Col. 1, lns. 40-46.

> The purchase card should be untraceable simulating a cash transaction which typically occurs in a typical "bricks and mortar" retail setting.

Col. 1, lns. 49-51.

3

> The purchasing card 40 includes a unique and non-traceable Master Card or Visa credit account number 42, a non-personalized cardholder name 43 (such as the name of the purchasing intermediary) and an expiration date 44 which allows a consumer to make a purchase(s) over the Internet or in other "bricks and mortar" retail establishments.

Col. 3, lns. 13-19.

> [E]ach purchasing card 40 is a "bearer card" which means it is as good as cash. Should the consumer lose or misplace the purchasing card 40, it may be used to the limit available on the card by anyone in possession of the card.

Col. 3, lns. 58-62.

> [T]he intermediary credit account information is not linked to the consumer, thereby maintaining the anonymity of the purchaser in future Internet transactions.

Col. 4, lns. 54-56.

> The intermediary credit account information further provides at least some pseudo purchase transactional information to the consumer. For instance, each purchasing card may have the same or a different non-personalized cardholder name listed on the card. When the consumer is prompted by the retailer's application 37 to provide a name, they simply insert the cardholder name, for example the name of the purchasing intermediary or an alias such as "John Smith" as provided on the card. . . . The account number, cardholder name and expiration date are then used by the retailer's application to complete the purchase transaction with the consumer in a manner known in the art.

Col. 5, lns. 10-24.

The patent claim states that the purchase cards are bearer instruments and the specification uses the term "bearer instrument" and "bearer card" interchangeably. The purchase cards disclosed and claimed in the '181 patent do not have precisely the same properties as cash because they can be distributed unfunded and inactivated, can expire and can be used only at

a retailer that accepts credit cards of the major branded credit card organization. When the claimed purchase card is distributed, its account is unfunded and inactive. If a purchase card is lost or stolen while it is unfunded and inactive, it is necessarily unusable. A card account is funded and activated in the "contacting" step of the '181 patent. When cards are distributed to retailers, they are not bearer instruments because they are not funded or activated. Once funded and activated, the cards become bearer cards. After the cards expire, they cease to be bearer instruments.

### III. Accused Products

American Express began offering the American Express Gift Card for sale in the United States in 2003. (The parties agree that the accused products do not include defendant's online sales process). The gift card is not cash, a credit card, charge card or debit card. It may be used only at merchants and retailers in the United States that accept the American Express Card. Defendants offer gift cards embossed with "American Express" and phrases such as "A GIFT FOR YOU," "GIFT FOR YOU," "$25 gift card," "CELEBRATE" and "INDULGE." Examples of these cards are pictured below:








6

American Express intends the phrases to be a marketing tag or greeting to the recipient. American Express documents refer to the phrase "Gift Card Recipient" as a "name." *See* AXPR 2981 ("Gift Cards are printed with the name 'Gift Card Recipient' on the front of the Card"); AXPR 2982 ("inside will be an American Express Gift Card printed with the name 'Gift Card Recipient'"); AXPR 3002 ("Card will be printed with the name 'Gift Card Recipient'"); AXPR 3020 ("Card will be printed with the name 'Gift Card Recipient'"); and AXPR 22377 ("Inside will be an American Express Gift Card printed with the name 'Gift Card Recipient'").

The accused gift card is a prepaid payment device with a dollar value that is either printed on the front of the card or a variable load amount that is selected at the time of purchase. American Express distributes its accused gift cards unfunded and inactive. When the gift card expires, or if it is reported lost or stolen, the card is no longer active. Although the card is not redeemable for cash, it can be replaced if lost or stolen with a new card that has a value equal to the available balance on the card at the time it was reported lost or stolen. If the card is not reported lost or stolen, anyone in possession of it can use it. Except in a handful of circumstances, it is as good as cash at any location that accepts American Express. The American Express gift card Terms and Conditions explain:

> You acknowledge that purchases made with prepaid cards, such as the Gift card, are similar to those made with cash or travelers cheques. You cannot "stop payment" or lodge a "billing dispute" on such transactions.
> \* \* \*
> Lost or Stolen Cards: You agree to keep the Gift Card secure and treat it like cash.

(The parties dispute whether the ability to deactivate the gift cards prevents the cards from being bearer instruments.)

The gift cards are not associated with or linked to any particular individual, so anyone who buys a card may use it himself or give it to someone else to use. During a purchase transaction, a retailer uses the gift card number, expiration date and security code located on the face of the card. The only gift card information that American Express receives from a retailer during a transaction is the 15-digit card number, the expiration date, the CSC value and the transaction amount. (The parties dispute whether the phrases embossed on the gift card have any purpose or are used in completing the purchase transaction.)

When using an American Express Gift Card to make a purchase online at Amazon.com, any fictitious name–regardless whether that name appears on the face of the gift card–can be entered as the cardholder name to complete a transaction. Amazon.com requires entry of text in the "cardholder name" field to complete a purchase transaction. PrivaCash's expert, Robinson, used an American Express Gift Card with the words "Celebrate" embossed on the card to make an online purchase on Amazon.com. When Robinson tried to make a purchase on the Amazon.com website without entering a cardholder name, Amazon gave an error message and required her to enter a cardholder name to complete the transaction. Amazon.com completed the transaction only after she entered the word "Celebrate" in the cardholder name field.

OPINION

**I. Legal Standard**

Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions and the court has reviewed such evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* F.R. Civ. P. 56(c). A fact is material

only if it might affect the outcome of the suit under the governing law. Disputes over unnecessary or irrelevant facts will not preclude summary judgment. A factual issue is genuine only if the evidence is such that a reasonable factfinder, applying the appropriate evidentiary standard of proof, could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (l986). Under Rule 56(e) it is the obligation of the nonmoving party to set forth specific facts showing that there is a genuine issue for trial.

Patent infringement analysis has two steps: first, the patent claims must be interpreted or construed to determine their meaning and scope; second, the properly-construed claims are compared to the process or product accused of infringing. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). The first step of this analysis, claim construction, is a matter of law reserved to the court. *Id.* at 970-71. To establish infringement, plaintiffs must prove that each claim element is present in the accused product. *In re Gabapentin Patent Litigation*, 503 F.3d 1254, 1259 (Fed. Cir. 2007); *Dawn Equipment Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1015 (Fed. Cir. 1998). PrivaCash must prove infringement by a preponderance of the evidence. *Nutrinova Nutrition Specialties and Food Ingredients GmbH v. International Trade Commission*, 224 F.3d 1356, 1359 (Fed. Cir. 2000). Conversely, defendants can prevail by proving that at least one element of the asserted claim is absent from its products.

"'Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents.'" *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1374-1375 (Fed. Cir. 2007) (quoting *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005)). The only theory of infringement

presented by PrivaCash is direct infringement, which "requires a party to perform or use each and every step or element of a claimed method or product." *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007).

This case involves a method claim for which no single party performs the all of the claimed steps or processes, including distributing and issuing the cards, contacting the card provider to activate the card and transacting a purchase. The patent states that the card provider distributes and issues the purchase cards, a retailer contacts the purchase card provider to activate and fund the card and a cardholder presents the card to a retailer who contacts the card provider to transmit information necessary to complete the purchase transaction. In *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008), the Court of Appeals for the Federal Circuit explained that the proper standard for determining whether a method claim is directly infringed by the combined actions of multiple parties was set forth in *BMC Resources*.

In *BMC Resources*, 498 F.3d at 1379, the court held that as in this case, "[w]hen a defendant participates in or encourages infringement but does not directly infringe a patent, the normal recourse under the law is for the court to apply the standards for liability under indirect infringement." Although PrivaCash does not discuss its theory of liability in its brief, PrivaCash has alleged direct infringement, induced infringement and contributory infringement on the part of defendants. Dkt. 51. "Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of indirect infringement." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).

To prevail under a theory of indirect infringement, a plaintiff must prove that the defendant's actions led to direct infringement. *Id.* at 1274. In other words, the plaintiff must show that the defendant is the "mastermind" and exercises "control or direction" over the entire process such that every step is attributable to it. *Muniauction*, 532 F.3d at 1329 (citing *BMC Resources*, 498 F.3d at 1380-81); *see also SiRF Technology, Inc. v. International Trade Commission*, 601 F.3d 1319, 1329 (Fed. Cir. 2010) (reiterating in dicta that with a method claims specifying third party performance of a step or in which third party actually performs a designated step, accused infringer must control or direct performance of that step to be liable). With respect to evidence of direct infringement, the Federal Circuit has held that "a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." *ACCO Brands, Inc. v. ABA Locks Mfg. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) (citing *Dynacore*, 363 F.3d at 1275-76). "Hypothetical instances of direct infringement are insufficient," and the "mere sale of a product capable of substantial non-infringing uses does not constitute indirect infringement of a patent." *Id.* at 1313-14 (quoting *Dynacore*, 363 F.3d at 1275).

## II.  Infringement Analysis

PrivaCash has alleged that defendants have infringed, induced others to infringe and/or committed acts of contributory infringement of its '181 patent by making, using and selling open loop gift cards. Defendants assert that they are entitled to summary judgment on infringement because the accused gift cards do not meet at least two limitations of the asserted claims. Specifically, they contend that the American Express gift card does not contain a non-personalized cardholder name and is not a bearer instrument.

11

### A. Non-Personalized Cardholder Name

In the claims construction order entered on March 26, 2010, dkt. 61, this court determined that the term "non-personalized cardholder name" means a name that does not identify the purchase card as belonging to a specific cardholder and that is used by a retailer to complete a purchase transaction. At issue on summary judgment is whether the phrases embossed on the face of defendants' gift cards—including "American Express," "A Gift For You," "Celebrate" and "Indulge"—serve the functional purpose of being used by a retailer to complete a purchase transaction. Defendants contend that theses phrases merely are a marketing tag or a greeting to the recipient that serve no specific function during the actual purchase transaction. PrivaCash argues that defendants' intent is irrelevant and that the phrases appearing on the accused gift cards meet the claim limitation because they *can be used* to complete a purchase transaction.[1] In support, PrivaCash cites the report of its expert, Bridget Robinson, who successfully completed a test purchase transaction on Amazon.com using the phrase "Celebrate" as the cardholder name.

As a starting point, I note that although defendants do not argue the point, it is questionable whether the accused words and phrases, except for "American Express," can be considered "names." The term "name" commonly is understood to be "a word or phrase that constitutes the distinctive designation of a person or thing." Merriam–Webster's Online Dictionary.[2] Although "American Express" is a name, the phrases "Celebrate," "Indulge" and "A

---

[1] Although PrivaCash appears to be invoking the doctrine of equivalents, it limits its arguments to direct infringement.

[2] Accessed at http://www.merriam-webster.com/dictionary/name (visited September 22, 2010).

12

Gift for You" do not designate a person or thing and therefore do not embody the "non-personalized cardholder name" claim element.

Turning to the parties' main dispute, although PrivaCash has shown that the accused gift cards *can* be used in an infringing manner (*i.e.*, by entering the text from the gift card into the cardholder name field during an online purchase transaction), it has not shown that the text appearing on the gift cards was intended to allow retailers to complete a purchase transaction.

Moreover, PrivaCash has not adduced any evidence of direct infringement, such as evidence that gift card recipients actually have used the phrases on defendants' gift cards to make purchases. This is important because, as the Court of Appeals for the Federal Circuit recently instructed, "[u]nless the claim language only requires the capacity to perform a particular claim element, . . . it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement." *Fujitsu Ltd. v. Netgear Inc.*, ___ F.3d ___, 2010 WL 3619797, *5 (Fed. Cir. Sept. 20, 2010) (citing *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991); *ACCO*, 501 F.3d at 1313). As discussed at length in this court's claims construction order (dkt. 61), the claim language of the '181 patent makes clear that a "non-personalized cardholder name" is a necessary component for conducting an anonymous transaction with a retailer over the internet, which is the patented method's primary objective. Therefore, to infringe, the accused gift cards must do more than have the *capacity* to perform this element.

The facts in *ACCO* illustrate the importance of direct evidence of infringement and thus are instructive in this case. The computer locking device accused in *ACCO* could be operated in one of two ways but only one mode infringed the patent-in-suit. 501 F.3d at 1313. The court

13

found that because the accused lock could be used in a noninfringing manner at any given time, it did not necessarily infringe the patent-in-suit. *Id.* The court also found it significant that the plaintiff, ACCO, failed to point to specific instances of direct infringement. *Id.* Although ACCO's expert testified that he had used the accused product in an infringing manner, there was no evidence of actual users having operated the lock in that way. *Id.*

In the instant case, PrivaCash has done no better than ACCO. PrivaCash's only evidence of infringement is testimony from its expert that the accused gift cards can be used in an infringing manner, not that gift card recipients used or were aware that they could use the accused cards in this way. Accordingly, PrivaCash has failed to establish a genuine issue of material fact regarding direct infringement of the "non-personalized cardholder name" element of claim 1, which means that defendants are entitled to summary judgment on the issue of infringement.

### B. Bearer Instrument

Although it is unnecessary to reach this element, I also find that the accused products fail to meet the claim limitation requiring the card to be a bearer instrument. The term "bearer instrument" is not defined in the patent and has not been construed by the court. The patent specification explains that the claimed purchasing card "is a 'bearer card' which means it is as good as cash. Should the consumer lose or misplace the purchasing card **40**, it may be used to the limit available on the card by anyone in possession of the card." Col. 3, lns. 58-62.

The parties seem to agree that a bearer instrument is a negotiable instrument that may be used up to the limit available on the card by anyone in possession of the card. They also agree that both the claimed purchase card and the accused American Express gift card are not bearer

instruments until they are funded. What the parties dispute is whether this element encompasses cards that can be canceled or deactivated. Although the claimed purchase card remains a bearer instrument, at least until it expires, the American Express gift card can be deactivated by its owner if the card is lost or stolen.

Defendants assert that this difference is significant because unlike the claimed purchase card, the gift cards are not as good as cash once they are funded. PrivaCash disagrees, arguing that defendants' gift cards "are bearer instruments as long as they remain funded and activated."[3] Defendants rejoin that PrivaCash has failed to show that its patent defines bearer instrument in a way that includes cards that can be deactivated or turned off. I agree.

A stated purpose of the '181 patent is to simulate a cash transaction. The specification teaches that the claimed card is as good as cash and "[i]n this way . . . provides a means for preserving the anonymity of the purchaser." Col. 3, lns. 62-64. Nothing in the claim or specification indicates that this feature is of limited duration. In fact, allowing a purchaser to cancel the card necessarily would put the purchaser in the position of having to identify him-/herself to someone, perhaps after having already used the card in a fashion with which the purchaser might wish not to be associated. Even allowing this possibility could mousetrap card purchasers into compromising the anonymity that is the essence of the patented method.

Indeed, the specification specifically warns that, should a consumer lose or misplace the purchasing card, "it may be used to the limit available on the card by anyone in possession of the card." In contrast, a card that can be deactivated in the event of loss or theft cannot be used to

---

[3] Again, Privacash only argues direct infringement and does not assert that the accused gift card functions in an equivalent manner to the patented invention.

15

the funded limit by anyone in possession of the card. PrivaCash has not pointed to anything in the claim language or specification that would support its proposed broad, almost counterintuitive reading of "bearer instrument," nor has PrivaCash argued that one of ordinary skill in the relevant art would understand a "bearer instrument" to include a gift card that can be deactivated by an original owner who no longer possesses it. Without more, plaintiff cannot prevail on its infringement claim with respect to this claim element.

### III. Invalidity

Both parties have moved for summary judgment on defendants' counterclaim that the '181 patent is invalid as anticipated or rendered obvious by the accused gift cards and other prior art. Dkt. 63 and 68. (Defendants have withdrawn their argument that the '181 patent impermissibly claims non-patentable subject matter. *See* Dkt. 110.) However, the Court of Appeals for the Federal Circuit has held that a district court has the discretion to dismiss invalidity counterclaims upon a grant of summary judgment of non-infringement. *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998); *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993) (in addressing motion for declaratory judgment district court has discretion to decide whether to exercise jurisdiction even when established). It is appropriate for a district court to address only the infringement issue when non-infringement is clear and invalidity is not plainly evident. *Id.* (citing *Leesona Corp. v. United States*, 530 F.2d 896, 906 n. 9 (Ct. Cl. 1976)).

Discretionary dismissal of defendants' invalidity counterclaim is appropriate in this case because PrivaCash has not shown that the accused products infringe every element of the '181 patent and it is not plainly evident whether the patent is invalid. A finding of invalidity would

16

require analyzing several pieces of prior art and reviewing an additional patent. It would be an unnecessary expenditure of judicial and party resources to explore these issues at this time when defendants have not given the court any reason to believe that it is at risk of a future infringement suit concerning the '181 patent.

Because I am granting summary judgment for defendants on the core issue of non-infringement on clear grounds, and because defendants' invalidity counterclaim is less certain, I am exercising my discretion and dismissing without prejudice defendants' invalidity counterclaim.

## ORDER

IT IS ORDERED that

(1) The motion for summary judgment filed by defendants American Express Company, American Express Travel Related Services Company, Inc. and American Express Prepaid Card Management Corporation, dkt. 63, is GRANTED with respect to plaintiff PrivaCash's claims that defendants infringed claims 1, 6 and 8-13 of United States Patent No. 7,328,181 and DENIED with respect to defendants' counterclaim asserting invalidity;

(2) Plaintiff's motion for summary judgment on defendants' counterclaim that the '181 patent is invalid as anticipated, dkt. 68, is DENIED; and

(3) The clerk of court is directed to enter judgment in favor of defendants with respect to PrivaCash's claims for infringement, dismiss the remaining counterclaims without prejudice and close this case.

Entered this 4th day of October, 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge